IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION<br><br>NO. 1:16-CR-128-2-MHC-CMS |
| DEANTHONY L. FOSTER, | |
| Defendant. | |

## **REPORT AND RECOMMENDATION**

This case is before the court on Defendant Deanthony Foster's Motion In Limine to Preclude Testimony of Expert Witness FBI Special Agent Chad Fitzgerald. (Doc. 107).

### I.  BACKGROUND FACTS

On June 22, 2016, a grand jury in the Northern District of Georgia returned a 15-count First Superseding Indictment charging Foster and three others with criminal offenses stemming from a series of armed robberies occurring between May 15, 2015 and October 7, 2015. (Doc. 51).

In connection with its prosecution, the Government has provided Foster with written notice that it intends to call FBI Special Agent Chad Fitzgerald as a witness

in the area of cellular telephone communications and historical cell site analysis. (Doc. 134-1). Special Agent Fitzgerald is expected to testify regarding the extent to which nine phones attributed to Foster and his co-defendants were serviced by cell towers in the general geographic areas of the robberies listed in the indictment. (Id. at 2). Specifically, the notice informed the defendants that:

> Agent Fitzgerald is expected to testify that cell site data for each cell phone number will show that signals from their phones were received by cell towers near the locations of one or more robberies identified in the Superseding Indictment at times close to the times of the robberies with which each defendant is charged in the Superseding Indictment.

(Id.). In its brief, the Government has made clear that Special Agent Fitzgerald will not testify that any of the phones were in a precise location during the calls in question. Rather, he will testify to the general location of the phones relative to the cell towers near the sites of the robberies and to the times the phones were used to make calls that transmitted through those towers. (Doc. 134 at 3).

In the pending motion in limine, Defendant Foster argues that this Court should preclude Special Agent Fitzgerald's testimony because the methodology underlying his proffered testimony does not meet the standard of scientific reliability set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993). (Doc. 107 at 3). Foster argues that this evidence can give only a rough approximation of location and amounts to nothing more than junk science. (Id.). In

2

response, the Government argues that for years, Special Agent Fitzgerald's methodology has been widely accepted by federal courts across the country and that it easily passes the Daubert standards. (Doc. 134 at 9-10).

On March 1, 2017, I held an evidentiary hearing on this motion. (Doc. 148, Transcript ["Tr."]). At the onset of the hearing, counsel for Foster clarified that he was not challenging Special Agent Fitzgerald's qualifications to provide the proposed testimony, but rather was challenging only the methodology. (Id. at 3-4). The Government then called Special Agent Fitzgerald to testify. The Government solicited information regarding Special Agent Fitzgerald's training and education, his role within the FBI's Cellular Analysis Survey Team ("CAST"), and his vast experience in analyzing cell site data. (Id. at 5-11). Special Agent Fitzgerald provided relevant background information as to the technology underpinning cellular communications and the records maintained by the telecommunications industry. He then explained that the methodology employed in this case is consistent with the standard practice of the CAST unit and the approach taught to other law enforcement agencies through CAST's training programs. (Id. at 11-33). He explained that the reliability of their methodology is repeatedly tested and verified throughout the investigative process and is subject to peer review. (Id. at 31-32). Counsel for Foster cross-examined Special Agent Fitzgerald extensively

regarding his general methodology, probed the basis for the inferences resulting from his analysis, and questioned the usefulness of the peer review process. (Id. at 36-55).

At the conclusion of the hearing, I noted that defense counsel's questioning of Special Agent Fitzgerald appeared to present valid points for cross-examination at trial, but that the methodology used appeared to satisfy the Daubert factors. (Tr. at 71-72). I also indicated that although I was inclined to deny Foster's motion, I was willing to give Foster the opportunity to file a supplemental brief in light of the evidence produced during the evidentiary hearing. (Id.).

After the transcript was prepared, Foster filed a one-page supplemental brief making no new arguments and citing none of the evidence adduced at the hearing. (Doc. 150). He stated simply "that the issues set forth in the motion have been adequately briefed for the court." (Id.). The Government also filed a supplemental brief, reiterating its position that Foster's motion is meritless. (Doc. 156).

## II. DISCUSSION

Federal Rule of Evidence 701 governs opinion testimony by lay witnesses, who may testify only as to opinions that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to

determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

In contrast, Rule 702 provides that a witness who is qualified as an expert (by either knowledge, skill, experience, training, or education) may provide opinion testimony if the following four factors are present:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under this rule, as well as the Supreme Court's ruling in Daubert and its progeny, expert testimony is admissible if "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." City of Tuscaloosa v. Harcros Chem., Inc., 158 F.3d 548, 562 (11th Cir.1998) (citing

5

Daubert, 509 U.S. at 589.)  Factors that courts generally consider in evaluating scientific validity under Daubert include: whether the theory or technique can be and has been tested; whether the theory or technique has been subjected to peer review and publication; the method's known or potential rate of error; and whether the theory or technique finds general acceptance in the relevant scientific community.  Daubert, 509 U.S. at 592, 594.

Foster argues that the methodology Special Agent Fitzgerald and his team use is "junk science" because it is premised on the understanding that a cell phone connects to the tower in its network with the strongest signal and that the tower with the strongest signal is usually the one closest to the cell phone at the time the call is placed.  (Doc. 107 at 3-4).  Foster identifies a number of factors that may affect a tower's signal strength, such as technical characteristics of the tower, the type of antennas in the phone, and environmental and geographical variables.  (Id. at 4).  According to Foster, these factors make the methodology unreliable and diminish the probative value of expert testimony based on the methodology.  (Id. at 5).

In response, the Government argues that the historical cell site methodology underpinning the proffered testimony is widely accepted, and provides a list of cases in this district at which Special Agent Fitzgerald has been allowed to testify

6

as an expert. (Doc. 134 at 7-8). See e.g., United States v. Ivey Grant, 1:09-cr-482-TWT-5, Docket Entry 320, August 19, 2011 (denying a motion in limine to exclude testimony of Special Agent Fitzgerald); United States v. Charles Jackson, Jr., 1:14-cr-77-TWT, Docket Entry 74, August 11, 2015 (denying without an evidentiary hearing a motion to exclude testimony of Special Agent Fitzgerald); United States v. Roderick Thornton, 1:13-cr-466-AT, Docket Entry 65, December 19, 2014 (denying motion in limine after holding an evidentiary Daubert hearing). In denying a nearly identical motion in limine to the one presented in this case, United States District Judge Thomas W. Thrash noted that "[f]ederal courts throughout the country have found FBI Special Agent Chad Fitzgerald's expert testimony helpful to the jury in determining the approximate location of perpetrators' cell phones during times relevant to charged crimes." Jackson, 1:14-cr-77-TWT, Docket Entry 74 at 1. I agree with Judge Thrash and reach the same conclusion.

It is evident that Special Agent Fitzgerald is qualified to testify as an expert in cellular technology and historical cell site analysis. With respect to the methodologies upon which his proffered testimony relies, the use of historical cell site data to determine the general location of a cell phone at a particular time has been widely accepted by numerous federal courts in this district and across the

country.  Foster has come forward with no evidence to show that the methodology is unreliable or that the proffered testimony would not be helpful to a jury.

Having considered the parties' arguments, Special Agent Fitzgerald's testimony, and my own experience, I find that the proposed expert testimony satisfies the standards of Rule 702, is based on scientific knowledge, and would be helpful to the jury.  Accordingly, it is admissible under Daubert.  To the extent that Foster wishes to challenge Special Agent Fitzgerald's testimony by pointing to various factors that may affect a tower's signal strength and thereby affect the conclusions that may be drawn based on a phone connecting to such a tower, such arguments go to the weight, rather than the admissibility, of the evidence.

### III. CONCLUSION

For the foregoing reasons, I **RECOMMEND** that Defendant Deanthony Foster's Motion In Limine to Preclude Testimony of Expert Witness FBI Special Agent Chad Fitzgerald (Doc. 107) be **DENIED**.

**SO  RECOMMENDED**, this 11th day of May, 2017.

*Catherine Salinas*
CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE