IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

DEANTHONY L. FOSTER,

    Defendant.

CRIMINAL ACTION

NO. 1:16-CR-128-2-MHC-CMS

## **REPORT AND RECOMMENDATION**

This case is before the court on three motions to dismiss filed by Defendant Deanthony Foster:

1. Motion to dismiss the seven substantive Hobbs Act robbery counts (Counts 2, 4, 6, 8, 10, 12, and 14) as duplicitous (Doc. 121);

2. Motion to dismiss the seven 924(c) counts (Counts 3, 5, 7, 9, 11, 13, and 15) due to failure to properly plead aider and abettor liability (Doc. 122); and

3. Motion to dismiss the seven 924(c) counts (Counts 3, 5, 7, 9, 11, 13, and 15) because a Hobbs Act robbery is not a proper predicate offense for 924(c) liability (Doc. 123).

### I.    ALLEGATIONS IN THE INDICTMENT

On June 22, 2016, a grand jury in the Northern District of Georgia returned a 15-count First Superseding Indictment (the "Indictment") charging Foster and three others with criminal offenses stemming from a series of armed robberies

occurring between May 15, 2015 and October 7, 2015. (Doc. 51). Foster is charged in each count. (Id.).

Count 1 alleges a conspiracy against all four defendants. (Doc. 51 ¶ 1). It alleges that between May 15, 2015 and October 7, 2015, the four charged defendants engaged in a conspiracy "to obstruct, delay and affect commerce by robbery . . . of six Wal-Mart Stores and a Citgo Food Store" and to "use a firearm to knowingly commit and threaten violence against employees of said stores." (Id.). As alleged in Count 1, Defendant Foster "entered the Wal-Mart Stores, wearing a surgical mask and concealing a firearm in his pocket, and approached the employees emptying the self-checkout registers. Once the defendant, DEANTHONY L. FOSTER, was in arms' reach from the employees emptying the registers, he demanded and took cash while brandishing his firearm, and in one robbery, discharging the firearm into the floor near the employees." (Id. ¶ 6). As alleged in the indictment, Foster similarly brandished a firearm while robbing a clerk at a Citgo Food Mart. (Id. ¶ 7).

The seven even numbered counts (Counts 2, 4, 6, 8, 10, 12, and 14) allege that Foster and certain of his co-defendants committed seven distinct commercial robberies in violation of the Hobbs Act, 18 U.S.C. § 1951(a). The remaining seven counts (Counts 3, 5, 7, 9, 11, 13, and 15) allege that Foster and certain of his co-

2

defendants violated 18 U.S.C. § 924(c) in relation to the Hobbs Act robbery violations alleged in the even-numbered counts by using (or carrying, or brandishing, or discharging) a firearm during each of the robberies. According to the Indictment, Foster was the gunman in each of the seven robberies. (Doc. 51 ¶¶ 2-11).

## II. DISCUSSION

### *A. The Hobbs Act Counts – Duplicity (Doc. 121)*

The charging language in each substantive robbery count is the same, other than the names of the defendants, the date, and the location. Those counts allege:

> On or about [DATE], in the Northern District of Georgia, the defendants, [NAMES], aided and abetted by each other and others unknown to the grand jury, did obstruct, delay, and affect commerce by robbery, as that term is defined in Title 18, United States Code, Section 1951 of [BUSINESS NAME] located at [ADDRESS], a business then engaged in and affecting interstate commerce, and in furtherance of the plan and purpose to commit the robbery, the defendants did knowingly commit and threaten physical violence against the persons of employees of [BUSINESS NAME], all in violation of Title 18, Untied States Code, Section 1951(a) and Section 2.

(Doc. 51, Counts 2, 4, 6, 8, 10, 12, and 14).

On August 1, 2016, one of Foster's co-defendants filed a motion to dismiss the Hobbs Act robbery counts arguing that the counts are duplicitous, and Foster later adopted the motion. (Docs. 82, 88, 97, 121). Through this adopted motion,

Foster argues that each of the even-numbered counts charges him with two separate crimes: (1) interfering with commerce by robbery; and (2) interfering with commerce "in furtherance of the plan and purpose to commit the robbery," by committing or threatening to commit physical violence against the employees of the victimized stores. (Doc. 121 at 6).

In response, the Government argues that each robbery count alleges a single Hobbs Act offense because each count alleges a single robbery on a specified date targeting a specified business. (Doc. 110 at 3). According to the Government, the "in furtherance language" in these counts, i.e., the language that Foster argues constitutes the second offense, is intended only to describe the way in which the defendants committed the robberies. (Id. at 4). The Government argues that this language was included to allege the crime more specifically and to put the defendants on notice that they are charged with committing a robbery that involved physical violence against the victim employees. (Id.). The Government argues that it has latitude to include relevant and material factual allegations in a charge, even where those allegations go beyond what must be proved, so long as the alleged facts are not inflammatory or prejudicial. (Id. at 5).

Foster filed a reply, but in it he provides no specific response to the Government's arguments. (Doc. 128). Rather, he states only that "[h]aving

reviewed the government's response [to his motion], Mr. Foster respectfully submits that the issues set forth in the motion have been adequately briefed for the Court" and that "the issues are ripe for ruling by the Court." (Id. at 1).

I agree with the Government that the "in furtherance language" merely specifies how the robbery is alleged to have been committed, and it does not provide an alternative theory or additional offense. Moreover, the dangers posed by duplicitous counts are not present here. The Eleventh Circuit has identified three such dangers: that a defendant may be prejudiced in a subsequent double jeopardy defense; that a court may have difficulty determining the admissibility of evidence; and that a jury may convict a defendant without unanimously agreeing on the same offense. See United States v. Schlei, 122 F.3d 944, 977 (11th Cir. 1997). Foster has made no attempt to show how any subsequent double jeopardy defense might be prejudiced, nor has he identified any evidentiary rulings that might be impacted by the manner in which the Indictment was pled. Finally, the third danger—the risk that a jury might convict Foster without unanimously agreeing on the same offense—can be cured (to the extent it exists) either by giving a unanimity jury instruction or by requiring the Government to elect the basis upon which it will continue the prosecution. See, e.g., United States v. Miller, 520 F.3d 504, 513 (5th Cir. 2008) (holding that even if the charge was

duplicitous, there was no risk of a nonunanimous verdict because the court gave an appropriate offense-specific instruction and a general unanimity instruction); United States v. Pansier, 576 F.3d 726, 734-35 (7th Cir. 2009) (holding that a potentially duplicitous indictment was not prejudicial because the risk of a non-unanimous verdict was cured by a revised indictment and jury instruction); United States v. Hicks, 529 F.2d 841, 843 (5th Cir. 1976) (finding that any issue regarding duplicity was resolved before submission to the jury where the government moved to elect one charge in duplicitous count); United States v. Starks, 472 F.3d 466, 471 (7th Cir. 2006) (holding that a special verdict form combined with instructions alleviated any concern regarding duplicity); United States v. Shumpert Hood, 210 F.3d 660, 663 (6th Cir. 2000) (noting that a defendant may move at trial to require the government to elect either the count or the charge within the count upon which it will rely).

Foster has failed to demonstrate that dismissal is required. Accordingly, I recommend that this motion to dismiss (Doc. 121) be denied.

### *B. The Section 924(c) Counts – Aider-and-Abettor Liability (Doc. 122)*

Foster has also moved to dismiss Counts 3, 5, 7, 9, 11, 13, and 15, which each allege a separate Section 924(c) violation based on the use of a firearm in connection with each robbery. The charging language in each Section 924(c)

count is the same, other than the names of the defendants, the date, and the location. Specifically, those counts allege:

> On our about [DATE], in the Northern District of Georgia, the defendant[s] DEANTHONY L. FOSTER [AND CO-DEFENDANT(S)], aided and abetted by [each other and] others unknown to the grand jury, did knowingly use, carry, and brandish a firearm during and in relation to a crime of violence for which the defendant may be prosecuted in a Court of the United States, that is, the robbery described in [Count _____] of this indictment, in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii) and Section 2.

(Doc. 51, Counts 3, 5, 7, 9, 11, 13, and 15[1]).

On August 1, 2016, one of Foster's co-defendants filed a motion to dismiss the Section 924(c) charges alleged in Counts 5, 7, 9, 11, 13, and 15, arguing generally that the Government had inadequately pled the charges in reference to aiding-and-abetting liability. (Doc. 83). Foster later adopted the motion and expanded the argument to include Count 3. (Docs. 89, 97, 122). The heart of the motion is that the Government failed to plead the appropriate mens rea for aider-and-abettor liability pursuant to Rosemond v. United States, 134 S. Ct. 1240 (2014).

---

[1] Count 15 differs only in that the word "discharge" is added after "brandish" and sub-section 924(c)(1)(A)(iii) is alleged. (Doc. 51 at 11.)

In Rosemond, the Supreme Court held that the mens rea needed to support a conviction for aiding and abetting the use of a firearm in a drug trafficking offense requires advance knowledge of the firearm. 134 S. Ct. at 1249. This holding flowed from the "basics about aiding and abetting law's intent requirement," which requires "the intent [to] go to the specific and entire crime charged." Id. at 1248.

In response, the Government argues that this motion does not apply to Foster because, unlike Foster's co-defendant who filed the original motion, Foster is alleged to be liable for the Section 924(c) violation as a principal. Foster filed a one-page reply that does not address this argument. (Doc. 129).

At this stage in these proceedings, the Court's role is limited to determining whether the indictment is legally sufficient. A legally sufficient indictment must do three things: (1) present the essential elements of the charged offense; (2) notify the accused of the charges against him; and (3) enable the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense. United States v. Jordan, 582 F.3d 1239, 1245 (11th Cir. 2009). "In determining whether an indictment is sufficient, we read it as a whole and give it a common sense construction." Id. (citations and internal quotation marks omitted).

Counts 3, 5, 7, 9, 11, 13, and 15 each charge Foster as the principal, who was aided and abetted by others. Counts 3, 5, 7, 9, 11, and 13 allege that Foster "did knowingly use, carry, and brandish" a firearm during and in relation to a crime of violence, and Count 15 alleges that Foster "did knowingly use, carry, brandish, and discharge" a firearm during and in relation to a crime of violence. (Doc. 51). Moreover, the conspiracy count, Count 1, makes clear that Foster is the alleged gunman. (Id. ¶¶ 6-7). As such, arguments about the level of pleading necessary to establish aider-and-abettor liability for the Section 924(c) charges is not at issue in Foster's prosecution, and the arguments asserted by Foster's co-defendant have no merit when applied to him. Accordingly, I recommend that this motion to dismiss (Doc. 122) be denied.

### *C. Hobbs Act Robbery as a Predicate for Section 924(c) Liability (Doc. 123)*

Section 924(c) prohibits using or carrying a firearm during a "crime of violence." 18 U.S.C. § 924(c)(1)(A). The statute defines "crime of violence" in two ways, in two separate clauses. See 18 U.S.C. § 924(c)(3). The "force clause" provides that the term "crime of violence" means an offense that is a felony and "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). The

9

"residual clause" provides that the term "crime of violence" also means an offense that is a felony and "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). As noted above, the Indictment alleges that Foster violated Section 924(c) by committing the listed Hobbs Act robberies.

On August 2, 2016, Foster's co-defendant filed a motion to dismiss the Section 924(c) charges alleged in Counts 5, 7, 9, 11, 13, and 15, arguing that the alleged robberies are not proper predicates for the Section 924(c) counts because the robberies do not qualify as "crimes of violence." (Doc. 85 at 1-2). Foster later adopted the motion and expanded the argument to include Count 3. (Docs. 90, 97, 123). The Government filed a response, and, as with the other two motions, Foster filed a one-page reply making no additional arguments. (Docs. 112, 130).

Foster argues that the Hobbs Act violations set forth in Counts 2, 4, 6, 8, 10, 12, and 14 cannot, as a matter of law, satisfy Section 924(c)'s "force clause," and therefore Counts 3, 5, 7, 9, 11, 13, and 15—which are based on the predicate offenses stated in the even-numbered counts—must be dismissed.[2] (Doc. 123 at 4-

---

[2] Foster also argues that Section 924(c)'s "residual clause" is unconstitutionally vague based on the U.S. Supreme Court's decision in Johnson v.

7). According to Foster, the determination of whether a predicate offense qualifies as a "crime of violence" should be resolved using the "categorical approach" set forth in in <u>Descamps v. United States</u>, 133 S. Ct. 2276 (2013). (<u>Id.</u> at 4). That approach requires courts to look only to the statutory definitions—<u>i.e.</u>, the elements—of the charged offense; only if each and every plausible application of the statute requires "the use, attempted use, or threatened use of physical force" can the defendant be held guilty of a crime of violence. (<u>Id.</u> at 5). Foster argues that the wording of the Hobbs Act allows for violations that do not necessarily require violent force, such as putting someone in fear of future injury to his person or property. (<u>Id.</u> at 5-6). Foster argues that because there are some Hobbs Act robberies that do not require "the use, attempted use, or threatened use of physical force," no Hobbs Act robbery can ever serve as a predicate "crime of violence" under the force clause of Section 924(c)(3)(A). (<u>Id.</u> at 7). I find this argument unavailing.

---

<u>United States</u>, 135 S. Ct. 2551 (June 26, 2015) which held that the residual clause under 18 U.S.C. § 924(e)(2)(B) of the Armed Career Criminal Act was unconstitutionally vague. Because I have concluded that the allegations of violations of the Hobbs Act in this case are sufficient to allege a "crime of violence" under Section 924(c)'s "force clause" in § 924(c)(3)(A), I need not determine whether Section 924(c)'s "residual clause" is constitutional. <u>See</u> <u>Ashwander v. Tenn. Valley Auth.</u>, 297 U.S. 288, 347, 56 S. Ct. 466, 483 (1936) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.").

Descamps concerned what approach sentencing courts should apply when called upon to determine whether a previous conviction qualifies as a "crime of violence" for purposes of sentencing enhancements. This issue, however, is not appropriate at the motion to dismiss stage. A district court in the Western District of Pennsylvania recently reached the same conclusion, stating:

> The categorical approach was created and applied for situations when a sentencing court had to make a determination based on a defendant's *previous* conviction as to whether the prior conviction qualified as a statutorily defined "crime of violence," which if the prior conviction did qualify it would have the effect of increasing the penalty for the defendant. This implicates Sixth Amendment constitutional concerns since a sentencing court necessarily was looking into the past at a bare and often incomplete record, where it was uncertain as to the exact conduct the particular defendant engaged in to warrant his conviction.
>
> On a pretrial motion to dismiss we do not face any of these concerns. The burden will be on the government to establish every element of the charged offenses, including whether the defendant has engaged in conduct that equates to the element of a crime of violence. A properly charged jury will then arrive at its conclusion and the Court, the defendant, and the government will know by the jury's verdict whether the defendant engaged in a statutorily defined crime of violence based on the facts as established at trial.

United States v. Monroe, 158 F. Supp. 3d 385, 392 (W.D. Pa. 2016) (italics in original). Thus, the practical difficulties facing sentencing courts that give rise to the categorical approach simply are not present at the pretrial stage of criminal proceedings. United States v. McDaniels, 147 F. Supp. 3d 427, 432-33 (E.D. Va.

2015) (observing that "the categorical approach is a judicially devised mode of analysis born and developed in the sentencing context for the purpose of ensuring that defendants are not punished for facts that are not found beyond a reasonable doubt by a jury."); United States v. Wells, No. 2:14-cr-280, 2015 WL 10352877, at *4 (D. Nev. Dec. 30, 2015) ("the categorical approach does not apply with respect to a pretrial motion to dismiss charges brought under 18 U.S.C. § 924(c)"), adopted by 2016 WL 697107, at *1 (D. Nev. Feb. 19, 2016); United States v. Lavunte Collins, No. 1:14-cr-302-TWT-AJB, 2016 WL 1639960, at *29 (N.D. Ga. Feb. 9, 2016) (Baverman, M.J.) (concluding that "it is inappropriate to apply Johnson's backward-looking categorical approach to a pretrial motion to dismiss a § 924(c) charge before the jury gets to decide whether the underlying [offense] constituted a 'crime of violence'"), adopted by 2016 WL 1623910, at *1 (N.D. Ga. April 25, 2016). In this case, the jury will decide whether the Government has proved the elements of all of the alleged crimes beyond a reasonable doubt, including whether the facts of the Hobbs Act violations amount to a crime of violence for purposes of Section 924(c).

Moreover, the clear language of the statute supports this conclusion. In denying a motion to dismiss dealing with the same issues, U.S. District Judge William S. Duffey, Jr. held as follows:

> The question here is whether Hobbs Act robbery is a crime of violence for the purposes of 18 U.S.C. § 924(c). The Court concludes that it is. The statute provides a definition for crime of violence. It provides that a crime is one of violence where the crime, in addition to being a felony, "has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or . . . that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Id. at § 924(c)(3). That is what Hobbs Act robbery requires. It is "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession...." 18 U.S.C. § 1951(b)(1). A plain reading of the statute establishes Hobbs Act robbery as a crime of violence, including for the purposes of Sections 924(c)(2) and (3). Johnson does not change its character as a crime of violence.

United States v. Philpot, No. 1:15-cr-00028-WSD, 2016 WL 7404440, at *2 (N.D. Ga. Dec. 22, 2016). The Eleventh Circuit has recently reached the same conclusion in the post-conviction context, holding that a Hobbs Act violation is a "crime of violence" under Section 924(c)'s "force clause." See In re Colon, 826 F.3d 1301, 1305 (11th Cir. 2016); In re Saint Fleur, 824 F.3d 1337, 1341 (11th Cir. 2016); In re Hines, 824 F.3d 1334, 1337 (11th Cir. 2016).

Here, the Government has alleged in the even-numbered Counts that Foster committed seven Hobbs Act robberies, in violation of 18 U.S.C. § 1951(a). (Doc. 51 at 4-10). I find these allegations to be sufficient to allege a "crime of violence" necessary to support the allegations in each of the 924(c) counts. See Monroe, 158

F. Supp. 3d at 392; Philpot, 2016 WL 7404440, at *2. Accordingly, I recommend that Foster's motion to dismiss (Doc. 123) be denied.

### III. CONCLUSION

For the foregoing reasons, I **RECOMMEND** that Defendant Deanthony Foster's three motions to dismiss (Docs. 121, 122, 123) be **DENIED**.

It appearing that there are no further pretrial or discovery matters to bring before the undersigned, it is therefore **ORDERED** that this case be and is hereby **CERTIFIED** as ready for trial.

**SO RECOMMENDED**, this 19th day of May, 2017.

_Catherine Salinas_
CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE